UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOUAN JABEZ JACKSON,

               Plaintiff,

          -against-

WARNER MUSIC GROUP CORP.; ATLANTIC
RECORDING CORPORATION; ATLANTIC
RECORDS; BRANDY NORWOOD; RODNEY
JERKINS; CHARLIE PUTH; CAMERON
THOMAZ ("WIZ KHALIFA"); DALLAS
AUSTIN; DAVID FOSTER; DIANE WARREN;
FRED JERKINS III; BRAD GILDERMAN;
HARVEY MASON JR.; MARC NELSON; GUY
ROCHE; PHIL GALDSTON; GORDON
CHAMBERS; CRAIG KALLMAN; ABC
TELEVISION NETWORK,

               Defendants.

1:23-CV-10100 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

By order dated January 8, 2024, the Court dismissed this *pro se* action in which Plaintiff

Jouan Jabez Jackson proceeds *in forma pauperis* ("IFP"); the Court dismissed Plaintiff's federal-

law copyright-infringement claims for failure to state a claim on which relief may be granted,

and declined to consider, under its supplemental jurisdiction, his claims under state law. (ECF 7.)

The Court, however, also granted Plaintiff 30 days' leave to replead his claims in an amended

complaint. (*Id.*)

By order dated January 23, 2024, the Court granted Plaintiff a 60-day extension of time

to file an amended complaint as specified by the Court's January 8, 2024 order. (ECF 9.) On

March 21, 2024, Plaintiff filed an amended complaint. (ECF 10.) Four days later, on March 25,

2024, he filed a second amended complaint. (ECF 11.) Plaintiff's 261-page second amended

complaint is the operative pleading for this action.

In his second amended complaint, Plaintiff specifies that he asserts only federal-law claims of copyright infringement. (*Id.* at 3, 10.) He names as defendants: (1) Warner Music Group Corporation ("Warner Music"); (2) Atlantic Recording Corporation ("Atlantic"), which appears to a subsidiary of Warner Music; (3) Atlantic Records; (4) Brandy Norwood ("Brandy'), which the Court understands to be the recording artist known as "Brandy"; (5) Rodney Jerkins; (6) Charlie Puth; (7) Cameron Thomaz (also known as "Wiz Khalifa"); (8) Dallas Austin; (9) David Foster; (10) Diane Warren; (11) Fred Jerkins III; (12) Brad Gilderman; (13) Harvey Mason Jr.; (14) Marc Nelson; (15) Guy Roche: (16) Phil Gladston; (17) Gordon Chambers; (18) Craig Kallman; and (19) the ABC Television Network ("ABC"). Plaintiff seeks $10 billion in damages "with a 10X multiplier applied to the actual damages and profits derived from the sales, streams, and any other exploitations of the infringed works." (*Id.* at 215.) He also seeks injunctive relief, including: (1) an order "enjoining the [d]efendants, their agents, servants, employees and all persons in active concert or participation with them, from further infringement of [his] copyrighted works"; and (2) "the impoundment and destruction of all infringing copies and all materials used to produce such copies." (*Id.* at 216.) Plaintiff further seeks declaratory relief, specifically, a declaration from this Court "that his copyrights have been infringed upon" by the defendants. (*Id.* at 13.)

For the reasons discussed below, the dismisses this action for failure to state a claim on which relief may be granted.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See*
Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to
construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret
them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470
F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits –
to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil
Procedure, which requires a complaint to make a short and plain statement showing that the
pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is
plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially
plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that
the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In
reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.*
But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action,"
which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After
separating legal conclusions from well-pleaded factual allegations, the Court must determine
whether those facts make it plausible – not merely possible – that the pleader is entitled to relief.
*Id.* at 679.

## BACKGROUND

### A.    Plaintiff's allegations in his second amended complaint

Plaintiff alleges that he owns the copyright to *Photo Finish*, a "song-lyrics collection,
which was registered with the United States Copyright Office under Registration Number

PAu002620878, dated August 9, 2001," (ECF 11, at 2.) He also alleges that he "has now obtained the official copyright registrations for the songs 'Assumptions Day,' 'Made A Champion,' 'That A Be Cool,' and 'Niche J. Dime,'" all of which, he asserts, he authored. (*Id.*) Plaintiff alleges that "[t]hese songs were written in March 1996, recorded in March 1997, and released on March 21, 1997. They are part of the [*Photo Finish*] song lyrics collection. . . . [Plaintiff is] [t]he copyright claimant for these works."[1] (*Id.*) He also specifically alleges that he "has duly registered . . . the musical compositions entitled 'Assumption Day, 'Made A Champion, 'That A Be Cool,' and 'Niche J. Dime,' with the United States Copyright Office [and that he] has received Certificates of Registration for these works, evidencing their copyright status." (*Id.* at 5.) Plaintiff further alleges that, "as the owner of all rights, title, and interest in and to the copyrights of [those] [w]orks[,] [he] holds the exclusive rights, including but not limited to, the reproduction, adaptation, public performance, and distribution of [those] [w]orks." (*Id.*)

Plaintiff alleges the following about some of the defendants: (1) Warner Music is a corporation with its principal place of business in New York, New York; (2) Atlantic is also a corporation, and it too has its principal place of business in New York, New York[2]; (3) Brandy Norwood, a recording artist, resides in California; (4) Rodney Jerkins, a record producer, resides in New Jersey; (5) Charlie Puth, a recording artist, resides in California; (6) Cameron Thomaz (also known as "Wiz Khalifa"), a recording artist and record producer, resides in Pennsylvania;

---

[1] Plaintiff has attached to his second amended complaint, within its "Exhibit A," a copy of a Certificate of Registration that he filed with the United States Copyright Office on July 31, 2001, which was received on August 9, 2001, for his work of song lyrics titled *Photofinish*, in which he stated that he created that work in 1997; the United States Copyright Office assigned the following registration number to that Certificate of Registration: PAu2-620-878. (ECF 11, at 219-20.) Plaintiff has also attached a copy of his lyrics from that work. (*Id.* at 223-32.)

[2] Plaintiff does not allege anything about the composition or location of "Atlantic Records," which appears to be a reference synonymous with Atlantic.

(7) Craig Kallman, the Chairman and Chief Executive Officer of Atlantic, resides in New York, New York; and (8) ABC "is an entity with a business presence and agents in New York County, New York." (ECF 11, at 14-16.) Plaintiff does not specify the positions or locations of any of the other named defendants, but states that "[a]dditional defendants may include other individuals or entities associated with the production, distribution, or promotion of the works at issue in this case, whose identities and roles will be further elucidated through the discovery process." (*Id.* at 16.)

Plaintiff alleges that the defendants "have engaged in a pattern of willful infringement of [his] copyrighted works, a pattern that has persisted for the past twenty years. This infringement has taken various forms, including the unauthorized use of [Plaintiff's] lyrical compositions in [their] . . . own works." (*Id.*) He asserts that the defendants' "infringing works have been widely distributed and have achieved commercial success, in part, due to the exploitation of [his] material. [They] . . . have profited from their infringing activities, while [Plaintiff] has been deprived of the recognition and financial rewards due to him as the creator of the original works." (*Id.* at 17.)

The alleged infringement began after Plaintiff, in March 1997, "hand-delivered a demo submission to . . . Rodney Jerkins [at his] . . . place of . . . business, 'Future Recording Studio in Virginia Beach[,] [Virginia]'." (*Id.*) Rodney Jerkins "was the Executive Producer and head producer on . . . Brandy Norwood['s] album [*Never Say Never*]." (*Id.* at 18.) Plaintiff asserts that the infringement commenced with the release of that album, in 1998. (*Id.* at 165; *see id.* at 47.) He also asserts that the infringement continued thereafter when: (1) in 2002, Brandy Norwood released the song "I Wanna Fall in Love," on her album *Full Moon*; (2) in 2008, when Brandy Norwood released the song "Right Here," on her album *Human*; (3) in March 2015, when

Charlie Puth released a song called "See You Again," featuring Wiz Khalifa, on his album *Nine Track Mind*; (4) in September 2019, when Brandy Norwood released the song called "Freedom Rings"; (5) in 2020, when Brandy Norwood released another album called *B7*, specifically, in songs on that album known as "Borderline" and "Saving All My Love"; and in (6) 2021 and/or 2022, when Brandy Norwood apparently performed the songs "Hear Me" and "Tomorrow's Another Day" on the ABC television series "Queens." (*Id.* at 20-24, 25, 57-59, 84-85, 87-88, 91-92, 141-42, 148, 193-94, 200.) This continued with Charlie Puth's March 2015 or 2024 release of the songs "Close To You," as well as with Brandy Norwood's March 26, 2024 release of the song "Talk About Our Love," on her album *Afrodisiac*. (*Id.* at 20-21, 58, 73, 78, 82, 91-92, 143, 190-94, 200.) This also continued with Charlie Puth's release of the songs "Marvin Gaye" and "One Call Away." (*Id.* at 7, 20-21, 31, 143.) Many of these albums were produced by Rodney Jerkins.[3] Both Brandy Norwood and Charlie Puth (and possibly Wiz Khalifa) are recording artists signed to the Atlantic label.

Plaintiff alleges that he discovered the abovementioned infringements on or after 2022, mostly after using an artificial intelligence computer application, which confirmed to him that his copyrights had indeed been infringed upon. (*Id.* at 6-7, 17, 25, 27, 31-32, 77-78, 80-125, 133, 178, 180, 192-98, 200-03.)

While Plaintiff does not make any specific allegations about the other defendants, he has attached to his second amended complaint an excerpt from the website Wikipedia, which

---

[3] Plaintiff alleges that "Rodney Jerkins, after having potential access to . . . [P]laintiff's demo as an intern, engaged in willful and egregious copyright infringement[,] . . .[which] is supported by a pattern of infringement that spans over three distinct periods: before the proceedings (1997-2000), during proceedings (2000-2002), and after proceedings (2004-2022)." (ECF 11, at 139.) The songs that Plaintiff alleges have infringed on his copyright were either "produced or influenced by Rodney Jerkins." (*Id.*) "[T]he[] similarities are the result of intentional borrowing or influence, and not mere coincidence . . . ." (*Id.*)

indicates that Defendants Dallas Austin, Diane Warren, Brad Gilderman, Marc Nelson, Guy Roche, and Fred Jerkins III are listed as writers and/or producers of songs on Brandy Norwood's album *Never Say Never*.[4] (*Id.* at 238, 241, 247-48.) He alleges the same as to Defendants Harvey Mason Jr. and David Foster, and that they were musicians who performed on that album. (*Id.* at 238, 240, 247-49.) Plaintiff alleges that Defendant Craig Kallman, Atlantic's Chairman and Chief Executive Officer, "had a hand in producing the album [*Never Say Never*] by Brandy Norwood."[5] (*Id.* at 144.)

Plaintiff asserts that the defendants have engaged in "a pattern of mosaic infringement across albums."[6] (*Id.* at 25; *see id.* at 26, 31-32, 65, 132, 148-49, 151.) He alleges that the defendants "have willfully engaged in a pattern of mosaic infringement by copying a combination of elements from [his] copyrighted works, thereby replicating the essence of the original compositions and violating Plaintiff's exclusive rights under the Copyright Act." (*Id.* at 152.) Plaintiff also alleges that the defendants "had access to [his] works and . . . there is a substantial similarity between [his] and [the] [d]efendants' works, which is indicative of copying." (*Id.* at 154.) He further alleges that this copying was "not accidental or coincidental but [was] part of a deliberate pattern of behavior, as evidenced by the repeated occurrences of similar elements across multiple works." (*Id.*) Plaintiff additionally alleges that his artificial intelligence "analysis revealed a mosaic infringement pattern across multiple songs from the

---

[4] The Wikipedia excerpt also credits Gilderman as a recording engineer and as responsible for "mixing." (ECF 11, at 248.)

[5] The Wikipedia excerpt lists Kallman as an executive producer of the album *Never Say Never*. (ECF 11, at 249.)

[6] Plaintiff defines "mosaic infringement" as "when a defendant copies various elements from a copyrighted work that, when pieced together, replicate the unique expression of the original work. This type of infringement is characterized by the cumulative effect of the copied elements, rather than any one element being copied in isolation." (ECF 11, at 156.)

[d]efendants' album[s], demonstrating thematic borrowing from . . . Plaintiff's work 'Assumptions Day.'" (*Id.* at 199; *see id.* at 202-03.) He alleges that such infringements "involve thematic and lyrical parallels between [his] works" and the defendants' works, which was only revealed to him due to his use of an artificial intelligence application. (*Id.* at 7; *see id.* at 9, 11-12, 16-17, 19-52, 54-177, 196, 202-16.) Plaintiff also alleges the infringement involves the use of ascending musical scales. (*Id.* at 67-68.)

**B.     *Jackson v. Atl. Records Corp.*, 2:00-CV-0865 (E.D. Va.)**

   In November 2000, Plaintiff brought a *pro se* action against Atlantic and the Motown Records Company ("Motown") in the United States District Court for the Eastern District of Virginia known as *Jackson v. Atl. Records Corp.*, 2:00-CV-0865 (E.D. Va.) ("*Jackson I*"). After granting Plaintiff leave to amend his complaint, in a report and recommendation dated August 13, 2002, Magistrate Judge F. Bradford Stillman considered Motown's and Atlantic's motions to dismiss, brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Plaintiff's claims in his *Jackson I* amended complaint arose from his allegations that, in 1998, Atlantic and Motown, *inter alia*, infringed on Plaintiff's copyright with regard to his *Photofinish* song collection, which, he alleged, included the songs "That A Be Cool," "Assumptions Day," "Made A Champion," and "Niche L. Dime." *Jackson I*, ECF 2:00-CV-0865, 42, at 3-5 (E.D. Va. Aug. 13, 2002) (report & recommendation, document not available on CM/ECF). In the report and recommendation, Magistrate Judge Stillman found that, with regard to Plaintiff's claims of copyright infringement, Plaintiff had failed to state a claim on which relief may be granted against the *Jackson I* defendants. *Id.* at 9-12. In doing so, Magistrate Judge Stillman found that Plaintiff had "fail[ed] to allege any facts in his Amended Complaint demonstrating that the defendants had access to his work, such that they could have copied it." *Id.* at 10. He also found that "[n]one of the artists that [P]laintiff alleges copied his work, such as Brandy . . . , were

aligned with Future Records when [P]laintiff allegedly delivered his demo package [to Future Records]; these recording artists are, in fact, aligned with the defendants." *Id.* at 11. Magistrate Judge Stillman further found that "[t]here is nothing in the pleadings linking [P]laintiff's work to the defendants in any way such that [P]laintiff could establish that the defendants had access to his work." *Id.* In addition, he found that "there is no claim for relief for copyright infringement . . . because there is no substantial similarity between [P]laintiff's work and that of the defendants." *Id.* Magistrate Judge Stillman noted that, in his amended complaint, "[P]laintiff sets forth his original writings as compared with the allegedly infringing language of recordings by the defendants and others," and found that, "from the face of the language set forth, . . . there is clearly little, if any, similarity between lyrics of [P]laintiff's songs and those of the defendants." *Id.* He also found that, "even if there is any similarity at all, there is no 'substantial similarity.'" *Id.* Moreover, Magistrate Judge Stillman found that, "[e]ven if there are some isolated words or phrases or a conceptual design that might be similar between the defendants' and [P]laintiff's works, or even if, as [P]laintiff contends, the defendants' lyrics are in some way 'in response' to the [P]laintiff's works, isolated words or phrases or 'conceptual design' does not constitute copyright infringement." *Id.* at 11-12. For those and other reasons, Magistrate Judge Stillman recommended that the court grant the defendants' motions to dismiss, brought under Rule 12(b)(6), for failure to state a claim on which relief may be granted. *Id.* at 15. In an order dated September 24, 2002, District Judge Rebecca Beach Smith adopted Magistrate Judge Stillman's August 13, 2002 report and recommendation, and granted the defendants' motions to dismiss with prejudice. *Jackson I*, ECF 2:00-CV-0865, 46 (E.D. Va. Sept. 24, 2002) (document not available on CM/ECF). Plaintiff did not appeal.

C.      *Jackson v. LaFace Records*, 2:03-CV-0874 (E.D. Va.)

In December 2003, Plaintiff brought a *pro se* action against LaFace Records, Motown,

Dreamwork Records, and Atlantic in the Eastern District of Virginia known as *Jackson v. LaFace*

*Records*, 2:03-CV-0874 (E.D. Va.) ("*Jackson II*"). His claims in *Jackson II* arose out of the

defendants' alleged illegal copying of his songs "Assumptions Day," "That A Be Cool," "Made

A Champion," and "Niche J. Dime" in their own songs, including "A Song Form Mama,"

"4 Seasons of Loneliness," "Dear God," "Girl in the Life Magazine," "I Will Get There," "Never

Say Never," "Have You Ever," "One Voice," and "You Don't Know Me." *Jackson II*, ECF 2:03-

CV-0874, 18, at 1-2 (E.D. Va. May 14, 2004) (opinion & final order; document not available on

CM/ECF). In an order dated May 14, 2004, among the other relief that Judge Smith granted the

defendants, she granted summary judgment to Atlantic, under the doctrine of *res judicata*, "as to

[P]laintiff's claims regarding the songs 'One Voice,' 'Have You Ever,' and 'Never Say Never.'"

*Id.* at 4-6. Judge Smith also granted Atlantic's motion for Rule 12(b)(6) relief, holding that, with

respect to Atlantic's song "U Don't Know Me," Atlantic did not infringe upon Plaintiff's song

"Assumptions Day" and, therefore, Plaintiff had failed to state a claim of copyright infringement

as to those songs. *Id.* at 6-9. Judge Smith noted that Plaintiff had attached to his *Jackson II*

complaint "a side-by-side comparison of his songs and the alleged infringing songs." *Id.* at 8.

She also noted that she "was hard-pressed to find any similarity, let alone substantial similarity,

between the works in question." *Id.* Judge Smith also held that any instances of similarity or

near-similarity between the songs at issue were "trite and unoriginal." *Id.* at 8-9. She further held

that, "[b]eyond the use of . . . common, unprotectable phrases, there is no similarity whatsoever

between 'Assumptions Day' and any of the defendants' . . . songs." *Id.* at 9. In addition to

granting summary judgment to Atlantic, "as to [P]laintiff's claims regarding the songs 'One

Voice,' 'Have You Ever,' and 'Never Say Never,'[Judge Smith] dismiss[ed] with prejudice all other claims against . . . Atlantic . . . for failure to state a claim." *Id.* Plaintiff did not appeal.

**DISCUSSION**

**A.      Claim preclusion**

To the extent that Plaintiff asserts federal-law claims of copyright infringement against Atlantic, arising from its alleged infringement of any part Plaintiff's *Photofinish* song-lyric collection on the date of the dismissal of *Jackson I* or before that date, the doctrine of claim preclusion requires the Court to dismiss those claims. Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a claim in a new civil action that was raised, or could have been raised, in an earlier civil action in which the same parties or their privies were involved, if the original claim resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from raising [claims] that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020). If a litigant files a new civil action and "advances the same claim as an earlier suit between the same parties [or their privies], the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties [or their privies], regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* (quoting *Brown*, 442 U.S. at 131). Claims are treated as the same if they "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (quoting *Lucky Brand Dungarees, Inc.*, 590 U.S. at 412 (citations and internal quotation marks omitted)).

Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties [or their privies], (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation*

11

*Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted). A "dismissal for failure to state a claim operates as 'a final judgment on the merits and thus has [claim preclusion] effects.'" *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).

To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see, e.g.*, *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, "whether facts essential to the second [suit] were present in the first" suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "A party cannot avoid the preclusive effect of [claim preclusion] by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted). Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise that defense, *see, e.g.*, *Griffin v. Carnes*, 72 F.4th 16, 21 (2d Cir. 2023).

Plaintiff's federal-law claims of copyright infringement against Atlantic arise, in part, from Atlantic's alleged infringement of parts of Plaintiff's *Photofinish* song-lyric collection that occurred on the date that *Jackson I* was dismissed or before it was dismissed. Plaintiff either raised such claims against Atlantic or could have raised such claims against it in *Jackson I*, that action was dismissed on the merits for failure to state a claim on which relief may be granted, and no appeal was taken. Thus, to the extent that Plaintiff asserts federal-law claims of copyright infringement against Atlantic arising from its alleged infringement of parts of Plaintiff's *Photofinish* song collection that occurred on the date that *Jackson I* was dismissed or before it

12

was dismissed, the Court dismisses such claims, under the doctrine of claim preclusion, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205-06 (2d Cir. 2002) (holding that the plaintiff's IFP action, which was dismissed as barred by claim preclusion (*res judicata*), was properly dismissed for failure to state a claim on which relief may be granted).

**B.    Issue preclusion**

The Court must also dismiss Plaintiff's claims of federal-law copyright infringement against Atlantic, arising from its alleged copyright infringement of parts of Plaintiff's *Photofinish* song-lyric collection with respect to Atlantic's songs "One Voice," "Have You Ever," "Never Say Never," and "U Don't Know Me" on the date that *Jackson II* was dismissed or before it was dismissed, under the doctrine of issue preclusion. This doctrine, also known as "collateral estoppel," bars relitigation of a specific legal or factual issue in a subsequent proceeding:

> where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (citation and internal quotation marks omitted, alteration in original); *accord Seneca Nation v. Hochul*, 58 F.4th 664, 668 (2d Cir. 2023). This doctrine "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (internal quotation marks and citation omitted); *Fresh Del Monte Produce Inc.*, No. 13-CV-8997 (JPO), 2016 WL 236249, at *5 (S.D.N.Y. Jan. 20, 2016) ("It is *issue preclusion*, not claim preclusion, which permits 'an issue of fact or law [ ] actually

litigated and determined by a valid and final judgment, and . . . essential to the judgment' to be 'conclusive in a subsequent action between the parties, whether on the same or a different claim.'" (quoting Restatement (Second) of Judgments § 27, p. 250 (1980) (emphasis in original, alteration in original))); *see generally Baker v. Gen. Motors Corp.*, 522 U.S. 222, 234 (1998) ("We see no reason why the preclusive effects of an adjudication on parties and those 'in privity' with them, *i.e.,* claim preclusion and issue preclusion (res judicata and collateral estoppel), should differ depending solely upon the type of relief sought in a civil action." (footnote omitted)). "A previous dismissal for failure to state a claim is a decision made on the merits for the purpose of future applications of issue preclusion." *Curcio v. Grossman*, No. 22-CV1648 (VB), 2022 WL 767167, at *4 (S.D.N.Y. Mar. 14, 2022), *aff'd*, No. 22-693, 2023 WL 31183 (2d Cir. Jan. 4, 2023) (summary order); *see Clark v. DMV*, No. 1:22-CV-3086 (JGK), 2022 WL 1471349, at *9 (S.D.N.Y. May 9, 2022) (quoting *Curcio*, 2022 WL 767167, at *4); *Nealy v. Berger*, No. 08-CV-1322, 2009 WL 704804, at *10 (E.D.N.Y. Mar. 16, 2009). "In addition, '[c]laims adjudicated through summary judgment are regarded as final judgments on the merits' for the purpose of issue preclusion." *Clark*, 2022 WL 1471349, at *9 (quoting *Manbeck v. Micka*, 640 F. Supp. 2d 351, 364 (S.D.N.Y. 2009)); *see Reeves v. City of Yonkers*, No. 17-CV-5341 (KMK), 2019 WL 2602897, at *4 (S.D.N.Y. June 25, 2019). As with claim preclusion, the Court may, on its own initiative, raise the defense of issue preclusion. *See Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 191 (2d Cir. 2017); *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)).

Among the other relief that Judge Smith granted the defendants in her May 14, 2004 *Jackson II* order, she granted summary judgment to Atlantic, under the doctrine of claim

preclusion (*res judicata*), with regard to Plaintiff's claims against Atlantic arising from its alleged copying of Plaintiff's lyrics from his songs "Assumptions Day," That Be A Cool," "Made A Champion," and Niche J. Dime," in Atlantic's songs "One Voice," "Have You Ever," and "Never Say Never." *Jackson II*, ECF 2:03-CV-0874, 18, at 4-6 (E.D. Va. May 14, 2004). Judge Smith also granted Atlantic's *Jackson II* motion for Rule 12(b)(6) relief, holding that, with respect to Atlantic's song "U Don't Know Me," Atlantic did not infringe upon Plaintiff's song "Assumptions Day" and, therefore, Plaintiff had failed to state a claim of copyright infringement as to those songs. *Id.* at 6-9. Both of those holdings were on the merits and Plaintiff failed to appeal them. Accordingly, to the extent that Plaintiff asserts claims in this action against Atlantic arising from its alleged copyright infringement of Plaintiff's *Photofinish* song-lyric collection with respect to Atlantic's songs "One Voice," "Have You Ever," "Never Say Never," and "U Don't Know Me" on the date that *Jackson II* was dismissed or before it was dismissed, the Court dismisses such claims for failure to state a claim on which relief may be granted, under the doctrine of issue preclusion (collateral estoppel). *See* § 1915(e)(2)(B)(ii); *Wachtmeister v. Swiesz*, 59 F. App'x 428, 429 (2d Cir. 2003) (summary order) (a dismissal for issue preclusion is a dismissal for failure to state a claim on which relief may be granted).

**C.    Infringement of a musical-composition copyright**

Notwithstanding the Court's rulings above, to the extent that Plaintiff alleges that any of the defendants have infringed on a musical-composition copyright that he owns for *Photofinish*, he has failed to state such a claim, as he has failed to show that he owns such a registered copyright.[7] As discussed in the Court's January 8, 2024 order, when determining whether a complaint fails to state a claim on which relief may be granted:

---

[7] In the Court's January 8, 2024 order, the Court granted Plaintiff leave to amend his complaint to allege facts showing why his federal-law claims of copyright infringement are

district courts "may review only a narrow universe of materials," which includes "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, . . . *matters of which judicial notice may be taken*," as well as "document[s] not expressly incorporated by reference in the complaint [that are] nevertheless 'integral' to the complaint,

(ECF 7, at 4 (quoting *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (italics in original)). As

also discussed in the Court's January 8, 2024 order (ECF 7, at 4), district courts may take judicial

notice of a litigant's federal copyright registration, as published in the United States Copyright

Office's registry, *see Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 261

(2d Cir. 2005). "To state a claim for copyright infringement, a plaintiff must allege 'both

(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'"

*Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (citation omitted).

Plaintiff alleges that he "has dully registered the Works, specifically[,] the musical

compositions entitled 'Assumptions Day,' 'Made A Champion,' 'That A Be Cool,' and 'Niche J.

---

timely or why the applicable three-year limitations period should be equitably tolled. (ECF 7, at 6-7.) As the Court noted in that order, "'copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement,'" and that "'[a]n infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement.'" (*Id.* at 7 (quoting *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124, 125 (2d Cir. 2014)). In addition, "[a] copyright claim . . . arises or accrue[s] when an infringing act occurs." *Petrella v. Metro-Goldwyn-Mayer Inc.*, 572 U.S. 667, 670 (2014) (internal quotation marks and footnote omitted, alteration in original). Furthermore:

> [i]t is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Id.* at 671 (citation and footnotes omitted). That being said, "[s]eparately accruing harm should not be confused with harm from past violations that are continuing." *Id.* at 671 n.6.

Notwithstanding the Court's rulings above, in light of the possibility that Plaintiff has alleged that the defendants have committed successive copyright infringements, the Court will assume, for the purposes of this order, that at least some of his federal-law claims of copyright infringement against the defendants may be timely.

Dime,' with the United States Copyright Office." (ECF 11, at 5.) He also alleges that he "has received Certificates of Registration for these works, evidencing their copyrighted status. The Certificates of Registration, along with the corresponding copyright deposits, are attached hereto as Exhibit A." (*Id.*) Plaintiff asserts that these songs "are part of the [*Photofinish*] song lyrics collection." (*Id.* at 2.)

Plaintiff, however, does not own a registered copyright to a musical composition arising from the work at issue here.

According to the United States Copyright Office's Public Catalog, Plaintiff either owns or co-owns four copyrights, but none are for the abovementioned songs. The copyright at issue here was registered on August 9, 2001, under Registration Number PAu002620878, under the title *Photofinish*. While the Public Catalog's "Type of Work" description of that work notes that it is "music," it also notes that it is a "song lyrics (collection)." Plaintiff has attached to his second amended complaint, at Exhibit A, his Copyright Office Certificate of Registration for *Photofinish*. (ECF 11, at 219-32.) In that Certificate, he describes the nature of that work as being "song lyrics," and the nature of his authorship of that work as being "words 'arrangement' lyrics"; he also attaches a copy of his Copyright Office receipt for retrieval of the abovementioned Certificate and what appears to be a copy of the handwritten lyrics that comprise *Photofinish*. (*Id.*) It does not, however, demonstrate that Plaintiff owns a copyright to a musical composition with regard to *Photofinish*; there is nothing in the Certificate of Registration or its attachments that shows that, in addition to lyrics, *Photofinish* is comprised of music. It merely shows that Plaintiff owns the copyright to a collection of written lyrics collectively known as *Photofinish*. Accordingly, to the extent that Plaintiff asserts claims of copyright infringement arising from the defendants' alleged infringement of a copyright that he owns for a

musical composition known as *Photofinish*, the Court dismisses those claims, for failure to state a claim on which relief may be granted, because he has failed to show that he owns a registered copyright in any such musical composition. *See* § 1915(e)(2)(B)(ii); *cf. Yesh Music, LLC v. Amazon.com, Inc.*, 249 F. Supp. 3d 645, 650 (E.D.N.Y. 2017) ("A copyright in the musical work embodies the right to the musical composition, i.e., '*the notes and lyrics of the song as they appear on sheet music*.'" (quoting *Recording Indus. Ass'n of Am., Inc. v. Librarian of Congress*, 608 F.3d 861, 863 (D.D.C. 2010) (emphasis added))); *Brown v. Columbia Recording Corp.*, No. 03-CV-6570 (DAB) (THK), 2006 WL 3616966, at *5 (S.D.N.Y. Dec. 12, 2006) ("[U]nder the copyright law 'there are two different and distinct sets of rights: the right to the musical composition [*the written lyrics and the accompanying music*], and the rights to the sound recording of the musical composition." (citation omitted and alteration in original, emphasis added)); *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 628 (E.D. La. 1999) ("[T]he rights of an owner of a copyright in a sound recording do not extend to the song itself. A copyright in the recording and in the song are separate and distinct and by statute are treated differently.").

**D.     Infringement of lyrics-only copyright**

Furthermore, Plaintiff has failed to allege facts sufficient to state a federal-law claim of copyright infringement with respect to what appears to be his lyrics-only copyright of *Photofinish*. As mentioned above, "[t]o state a claim for copyright infringement, a plaintiff must allege 'both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant.'" *Spinelli*, 903 F.3d at 197 (2d Cir. 2018); *accord Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) ("To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991))). "To satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has

actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]" *Abdin*, 971 F.3d at 66 (2d Cir. 2020) (internal quotations marks and citation omitted, emphasis and alteration in original). Copying is established when the plaintiff shows that the defendant had access to the copyrighted work and that there is a substantial similarity between the protected material of the copyrighted work and of the challenged work. *See Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (quoting *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993)). "In general . . . works are substantially similar when an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 53 (2d Cir. 2021) (internal quotation marks and citation omitted), *aff'd*, 143 S. Ct. 1258 (2023).

"[C]opyright protections 'extend[ ] only to those components of a work that are original to the author' – that is, those that are 'independently created by [the] author' and 'come[] from the exercise of the creative powers of the author's mind." *Montgomery v. NBC Television*, 833 F. App'x 361, 364 (2d Cir. 2020) (summary order) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) (alterations in original)). Thus, "[t]he protection that flows from such a copyright is . . . quite limited. The copyright does not protect ideas; it protects only the author's particularized expression of the idea." *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004). "[I]solated words, phrases, and concepts lack the originality required for copyright protection." *Montgomery*, 833 F. App'x at 364. "[I]t is axiomatic that words, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked." *Moody v. Morris*, 608 F. Supp. 2d 575, 579 (S.D.N.Y. 2009)*, aff'd*, 407 F. App'x 434 (2d Cir. 2011) (unreported per curiam judgment); *Logical Operations Inc. v. 30 Bird Media, LLC*, 354 F. Supp.

3d 286, 298 (W.D.N.Y. 2018) ("Single words [and] short phrases . . . are not generally protectible subject matter."); *see Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992) ("single words or short phrases . . . do not exhibit the minimal creativity required for copyright protection"); *Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir. 1987) ("a cliche or an 'ordinary' word-combination by itself will frequently fail to demonstrate even the minimum level of creativity necessary for copyright protection"); *see also Boone v. Jackson*, 206 F. App'x 30, 33 (2d Cir 2006) ("it is well-established that common phrases are not protectable under copyright") (summary order); *Jones v. Atl. Records*, No. 22-CV-0893 (ALC), 2023 WL 5577282, at *6 (S.D.N.Y. Aug. 29, 2023) (a plaintiff "cannot assert copyright protection over short, common phrases or words"), *appeal pending*, No. 23-1348 (2d Cir.); *We Shall Overcome Found. v. The Richmond Org., Inc.*, No. 16-CV-2725 (DLC), 2017 WL 3981311, at *14 (S.D.N.Y. Sept. 8, 2017) ("common phrases lack originality and are not eligible for copyright protection" (citing *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140 (2d Cir. 1998))).

In addition, common "[i]deas and themes are often the type of material that [the United States Court of Appeals for the Second Circuit has] determined are not copyrightable." *Betty, Inc. v. Pepsico, Inc.*, 848 F. App'x 43, 45 (2d Cir. 2021) (summary order). "[A]ttempts to . . . focus the court on broad themes . . . is precisely the approach that [the Second Circuit] reject[s] in copyright cases." *Id.* (citing and *Abdin*, 971 F.3d at 72); *Adin*, 971 F.3d at 72 ("[T]he suggestion that a copyright infringement claim can be based on such generic and common characteristics is 'highly illogical.'"); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1068-69 (2d Cir. 1988) ("striking similarity between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to reappear in many compositions"); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48-49 (2d Cir.

1986) ("In assessing claims of substantial similarity, courts therefore must decide 'whether the similarities shared by the works are something more than mere generalized idea or themes' . . . ."); *Reyher v. Children's Television Workshop*, 533 F.2d 87 (2d Cir. 1976) ("Copyrights . . . do not protect thematic concepts or scenes which necessarily must follow from certain similar plot situations. Thus, 'no one infringes, unless he descends so far into what is concrete (in a work) as to invade . . . (its) 'expression.'" (citation omitted)).

Inasmuch as Plaintiff owns a lyrics-only copyright with respect to his work *Photofinish*, he has not alleged facts showing that any of the defendants have infringed on that copyright. This is because he does not allege facts sufficient to show that any of the defendants actually copied his work. Plaintiff, as he did in *Jackson I* and in *Jackson II*, provides line-by-line, side-by-side, and/or thematic comparisons between his copyrighted work and those of the defendants that he alleges infringed on his copyright. (ECF 11, at 19-24, 32-43, 45, 47-52, 56-77, 80-124, 140-42, 143, 145, 147-51, 155, 157-59, 166, 172-73, 204-09.) Those comparisons do not reveal that the defendants copied any part of Plaintiff's *Photofinish* song collection. If there are any similarities between Plaintiff's work and the defendants' works, it is because both Plaintiff and the defendants used common words, phrases, and/or themes, which are not copyrightable. Plaintiff alleges nothing to suggest that any of the defendants' works are substantially similar to his work in ways that would implicate an infringement of his copyright. Thus, because Plaintiff, as in *Jackson I* and in *Jackson II*, does not allege facts sufficient to state any federal-law claim of copyright infringement, he fails to state a claim on which relief may be granted, and the Court must dismiss his claims for that reason.[8] *See* § 1915(e)(2)(B)(ii).

---

[8] In its January 8, 2024 order, the Court directed Plaintiff to address why this court is a proper venue for his federal-law claims of copyright infringement, according to the applicable venue provision, 28 U.S.C. § 1400(a). (ECF 7, at 8 n.3). Plaintiff has not do so in his second

E.     **Leave to amend is denied**

District courts generally grant a *pro se* plaintiff leave to amend his complaint to cure its

defects, but leave to amend may be denied if the plaintiff has already been given an opportunity

to amend but has failed to cure the complaint's deficiencies or because it would be futile. *See*

*Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruotolo v. City of New York*, 514 F.3d

184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it would

be futile for the Court to allow Plaintiff leave to amend his complaint again, the Court declines to

grant him another opportunity to amend.

## CONCLUSION

The Court dismisses this action for failure to state a claim on which relief may be

granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

amended complaint. Under Section 1400(a), which is the only applicable venue provision for
Plaintiff's federal-law claims of copyright infringement, "[c]ivil actions, suits, or proceedings
arising under any Act of Congress relating to copyrights . . . may be instituted in the district in
which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Plaintiff seems
to allege that Warner Music, Atlantic, Kallman, and ABC reside or can be found within New
York County, New York, within this judicial district. *See* 28 U.S.C. § 112(b). He also alleges
that Brandy resides in California, Rodney Jerkins resides in New Jersey, Puth resides in
California, and that Wiz Khalifa resides in Pennsylvania, all outside this judicial district. *See id.*
He does not allege, however, where those defendants' agents, as well as the other unmentioned
defendants, or their agents, reside or can be found. (ECF 11, at 15-16.) Plaintiff asserts that this
court is a proper venue for this action under 28 U.S.C. § 1391 (*id.* at 13, 16), but that is not the
applicable venue provision for his claims. Because some courts have interpreted Section
1400(a)'s use of the term "may be found" to refer to any judicial district in which a defendant is
subject to personal jurisdiction, including under New York's long-arm statute, N.Y.C.P.L.R.
§ 302(a), *see, e.g.*, *Roberts v. Keith*, No. 04-CV-100079 (CSH), 2009 WL 637231, at *1
(S.D.N.Y. Mar. 11, 2009); *Imagine Solutions, LLC v. Med. Software Computer Sys., Inc.*, No.
06-CV-3793, 2007 WL 1888309, at *10 (E.D.N.Y. June 28, 2007), and because of the possibility
that those defendants not alleged to reside within this judicial district have sufficient contacts
within this judicial district for the Court to have personal jurisdiction as to them, however, the
Court assumes, for the purposes of this order, that this court is a proper venue for all of
Plaintiff's federal-law claims of copyright infringement.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:   June 11, 2024
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge